IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**FRED M. LOMANGINO,** *individually, and as parent and legal guardian of* **F.L.,** *a minor, and* **CHARLES LOMANGINO,**

    **Plaintiffs,**

vs.

**POLARIS INDUSTRIES INC.,** *a Delaware corporation, and* **POLARIS INC.**, *a Minnesota corporation,*

    **Defendants.**

CASE NO. 2:21-CV-00501

## ORDER AND PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court is ***Plaintiff's Motion for Sanctions Against Defendants*** filed on February 10, 2023 (ECF No. 65), ***Polaris' Response to Plaintiffs' Motion for Sanctions*** filed on February 24, 2023 (ECF No. 97), and ***Plaintiffs' Reply to Polaris' Response to Plaintiffs' Motion for Sanctions*** filed on March 3, 2023 (ECF No. 101). Accordingly, this issue has been fully briefed and is ready for resolution. For the reasons stated *infra*, the Court **GRANTS IN PART AND DENIES IN PART** the Plaintiffs' *Motion for Sanctions*. (ECF No. 65)

### The Litigation

The heart of this product liability action concerns the lower A-arm assembly on the driver's side of a 2018 Polaris RZR XP 4 Turbo operated by the Plaintiffs on the Hatfield-McCoy Trail System in Logan County, West Virginia. While traversing a downward-sloping section of the Trail, the A-arm assembly failed, causing the vehicle to crash and seriously injure the Plaintiffs.[1]

---

[1] While the Defendants dispute the Plaintiffs' characterization of the crash, and appear to assign blame to operator error, the undersigned declines to get into those specifics, as the matter before him concerns only whether responsive discovery had been withheld intentionally, or inadvertently, and if the former, whether sanctions are necessary.

1

This discovery dispute concerns production requests that were not supplied to the Plaintiffs, despite having requested same, and only supplied to the Plaintiffs after their liability expert report was due, thus incurring additional costs and delay in prosecuting this case.

**Procedural Background**

This matter is somewhat unusual in the sense that the motion for sanctions was not a follow up to a previously filed motion to compel discovery responses: on or about February 9, 2023, the undersigned was advised by counsel for the Defendants that a discovery matter had recently been discovered, and requested an expedited hearing and briefing on the issue; accordingly, the Court directed the parties to file briefs and scheduled a hearing for February 13, 2023 (ECF No. 62). Pursuant to this Court's Order, the Plaintiffs filed their Motion for Sanctions (ECF No. 65), along with several exhibits in support.[2][3] On February 12, 2023, the Defendants filed their Preliminary Response to Plaintiffs' Motion for Sanctions (ECF No. 74).

Following the hearing on February 13, 2023, during which it became apparent that the Defendants neglected to produce certain information that was requested by the Plaintiffs several months previously, the undersigned ordered the Plaintiffs to identify outstanding discovery needed

---

[2] The attached exhibits are as follows: excerpts from the Plaintiffs' First Set of Interrogatories and Requests for Production of Documents to Defendants (ECF No. 65-1); an excerpt of the Defendants' responses to the Plaintiffs' first set of discovery requests provided on November 11, 2022 including approximately 1,600 pages of documents (ECF No. 65-2); a lengthy letter from the Plaintiffs' counsel to the Defendants' counsel dated December 7, 2022 concerning the Plaintiffs' problems with the Defendants' discovery responses (ECF No. 65-3); a letter from the Defendants' counsel in response to the Plaintiffs' counsel letter, dated January 20, 2023 (ECF No. 65-4); an email from the Defendants' counsel to the Plaintiffs' counsel dated February 6, 2023 (ECF No. 65-5); a copy of an Affidavit of Plaintiffs' expert, Dr. Marc Zupan, Ph.D. (ECF No. 65-6); an email from the Defendants' counsel to the undersigned's law clerk regarding the discovery issue recently discovered and a request for the Court's assistance in resolving same, dated February 8, 2023 (ECF No. 65-7).

The Plaintiffs also contemporaneously filed a Motion for Leave to File Certain Exhibits Under Seal in support of their Motion to Sanctions (ECF No. 63) which concerned information that were governed under the Protective Order entered in this case.

[3] On February 10, 2023, the Defendants filed their Motion to File their Position Paper Concerning Inadvertent Document Production Omissions Under Seal (ECF No. 66), along with several exhibits in support of same. Again, at issue were certain exhibits and references to same that were considered subject to the Protective Order.

by their expert and that the Defendants produce same no later than thirty days of the Plaintiffs' requests – the undersigned also directed the Defendants to file an updated response to the Plaintiffs' Motion for Sanctions, and for the Plaintiffs' to file their reply. In accordance with the Court's Order, the Defendants filed their Response to Plaintiffs' Motion for Sanctions on February 24, 2023 (ECF No. 97), including several exhibits.[4] Finally, on March 3, 2023, the Plaintiffs filed their Reply to Polaris' Response to Plaintiffs' Motion for Sanctions, along with an exhibit (ECF No. 101).[5]

## The Argument for Sanctions

The Plaintiffs assert that in response to their initial discovery requests, the Defendants submitted improper boilerplate objections and refused to produce responsive documents. The Plaintiffs attempted in good faith to narrow the scope of their discovery in an effort to compromise, and in turn, the Defendants proposed a protocol for additional testing of the A-arm Assembly consisting of destructive metallurgical testing. The Plaintiffs agreed, despite the discovery and

---

[4] The attached exhibits are as follows: an Affidavit of Traci Ketring, a Project Analyst, who assisted the Defendants in gathering responsive materials to the Plaintiffs' discovery requests (ECF No. 97-1); a thumb drive filed conventionally which concerns the Defendants disclosure documents and document productions (ECF Nos. 97-2, 97-3); an email dated February 6, 2023 from the Defendants' counsel to the Plaintiffs' counsel as well as the January 20, 2023 letter to the Plaintiffs' counsel (see footnote 1, *supra*) (ECF No. 97-4); a letter dated October 3, 2022 from the Plaintiffs' counsel to the Defendants' counsel, including a copy of the Plaintiffs' First Set of Interrogatories and Requests for Production of Documents (ECF No. 97-5); the letter from the Plaintiffs' counsel dated December 7, 2022 (see footnote 1, *supra*) (ECF No. 97-6); an email chain between the parties' counsel from December 2022 (ECF No. 97-7); an email from the Defendants' counsel to the Plaintiffs' counsel concerning metallurgical testing of the A-Arm by their experts (ECF No. 97-8); an email dated January 2, 2023 from the Plaintiffs' counsel to the Defendants' counsel regarding experts' supplemental reports following further testing (ECF No. 97-9); an email chain from February 2023 between the parties' counsel concerning discovery that lacks Bates numbers (ECF No. 97-10); another email chain from February 2023 between counsel regarding omitted responsive production just prior to mediation (ECF No. 97-11); an additional email chain dated February 7 – 8, 2023 regarding the omitted documentation (ECF No. 97-12); an email dated February 10, 2023 from the Defendants counsel to the Plaintiffs' counsel with a link for additional documents including the design drawings inadvertently omitted (ECF No. 97-13); an Affidavit of Alex Scheuerell, Senior Engineering Manager, concerning Polaris models' front suspension assemblies (ECF No. 97-14); an Affidavit of William Rodriguez, Design Supervisor, concerning Polaris' computer assisted design ("CAD") programs (ECF No. 97-15); transcript from the February 13, 2023 hearing held before the undersigned (ECF No. 97-16); and a copy of the Defendants' expert report of the analysis of the subject Polaris RZR control arm fracture (ECF No. 97-17).

[5] The sole exhibit concerned an updated Affidavit of Marc Zupan, Ph.D. (ECF No. 101-1)

expert disclosure deadlines looming, and after testing was completed, they submitted the report of their expert witness, Dr. Marc Zupan, Ph.D., on January 20, 2023. That same date, the Defendants maintained their boilerplate objections, insisting that they had produced all responsive materials to Plaintiffs. Discovery closed on January 30, 2023, and the Defendants submitted their own expert report on February 3, 2023. Included in that report were two design drawings the Plaintiffs saw only for the first time and concerned one of the very components of the A-arm Assembly that failed that is the subject of this civil action. The Plaintiffs identify ten (10) "Discovery Failures" as they relate to specific production requests, noting that the Defendants "falsely" contended that they produced all materials responsive to the Plaintiffs' requests – including these design drawings. Another problem with this is that the Plaintiffs requested these materials to be produced in its original and native format, and the Defendants failed to comply with this request.

    This case was unsuccessfully mediated on February 6, 2023, at which time the Defendants refused to explain why the documents were intentionally withheld. Later that evening, the Defendants' counsel emailed the Plaintiffs' counsel a link to over three hundred previously undisclosed documents as well as copies of the intentionally withheld documents with added Bates numbers and confidential designations. The Plaintiffs assert that the Defendants have refused to provide a copy of these documents as they exist in their expert's file, however. The Plaintiffs complain that the Defendants' discovery failures have adversely affected their expert's investigation – to the extent that he is unable to estimate the degree to which his investigation was impacted, his investigation is not yet concluded, and may be amended should additional information be obtained.

    The Plaintiffs point out that the Defendants do not dispute having failed to produce responsive discovery, as evidenced by the email to the Court notifying it of the omitted discovery,

in spite of having repeatedly advising the Plaintiffs that they had already produced same. The Plaintiffs contend that the Defendants have intentionally withheld massive volumes of critical evidence that helped the Plaintiffs' case, and ask the Court to impose the appropriate sanctions, including: pay the Plaintiffs' attorneys fees and costs expended in response to the Defendants' failure to comply with Fed. R. Civ. Pro. 26(e), as well as the Plaintiffs' expert witness fees and costs; inform the jury of the Defendants' discovery misconduct; that the Court designate certain facts be taken as established for purposes of this action, specifically that the A-arm Assembly was defectively designed and manufactured, that the Defendants were negligent in the design and manufacture of the A-arm Assembly, and that the Defendants had actual knowledge that the A-arm Assembly was defective as of 2018; that the Defendants expert's report be stricken in its entirety; that the Defendants be required to produce all improperly withheld documents and information; and that the Defendants' "Confidential" designation of all documents pursuant to the Protective Order be voided as they are directly related to public safety.

### The Argument Against Sanctions

The Defendants state that the Plaintiffs seek extraordinary relief in a situation where such measures are uncalled for: once the Defendants were aware of the omitted documents, they immediately corrected the error. The Defendants further point out that the history in this case does not belie any nefarious plot by the Defendants to withhold critical information from the Plaintiffs; there has been very little discovery in this case, including no depositions, and no motion to compel has even been filed in this action.

The Defendants have produced the 27 design drawings it inadvertently omitted and even allowed the Plaintiffs' expert additional time to amend his report and would not oppose the Plaintiffs if they sought to extend the trial date. The Defendants initially sought the Court's

assistance upon learning that there was discovery that had not been provided, despite having believed that it had. The Defendants state that in response to the Plaintiffs' discovery requests on November 11, 2022, they provided nearly 800 pages of documents that were organized into ten tabs that concerned the RZR Front Suspension Assembly.

While the Defendants concede that the Plaintiffs' counsel sent them a lengthy "good faith" letter dated December 7, 2022, they did not specify what information or documents they wanted, only made broad claims of deficiencies to the Defendants' production. On February 3, 2023, the Defendants disclosed its materials expert's report, and the following day, the Plaintiffs' counsel emailed the Defendants' counsel after having reviewed the expert's report, advised that they were reevaluating their opening demand at mediation, and withdrew their prior demand. A few hours later, the Plaintiffs' counsel emailed the Defendants' counsel regarding four documents cited in the expert's report which lacked Bates stamp numbers – the Defendants were able to locate two of those documents, although they had already been produced, and provided the Bates stamp references to the Plaintiffs' counsel. Regrettably, the two other documents concerned the design drawings that had been provided to the Defendants' expert on April 27, 2022, in advance of the May 17 – 17, 2022 disassembly/testing of the RZR.

Six days after the close of discovery, the Defendants assert that the Plaintiffs asked whether a "CAD Model" had been produced, and on the morning of mediation, on February 6, 2023, the Plaintiffs for the first time asked for specific documents – while the timeliness of the requests were discussed, the Plaintiffs' counsel advised that all further communications would be made through the mediator – the Plaintiffs doubled their demand and the mediation concluded.

The Defendants contend that the chronology in this case demonstrates cooperation in discovery, despite the fact that the Plaintiffs did not service written discovery until October 3,

2022, and still have not deposed a single Polaris witness. Outside of its 27-page "good faith" January 20, 2023 letter, the Plaintiffs have not complained about the discovery deficiencies until the weekend before the mediation. The Defendants argue that the Plaintiffs let the discovery clock run out to immediately file a motion for extraordinary relief rather than let this case proceed on the merits, despite the Defendants having voluntarily cured this limited omission.

The Defendants claim that on February 6, 2023, they produced supplemental documents in response to the Plaintiffs' January 20, 2023 "good faith" letter, this included the two design drawings provided to the Defendants' expert in April 2022, totaling 154 imaged documents and 10 native documents. On February 8, 2023, for the first time, the Plaintiffs identified three specific deficiencies in the Defendants' document production: (1) production of macroetching[6] documents; (2) production of Polaris' CAD design program; and (3) production of additional finite element analysis ("FEA") materials. The Defendants dispute the relevancy of these materials, and note they have nothing to do with the design drawings, but agreed to produce these materials on February 10, 2023. The Defendants emphasize that the macroetching documents were requested after mediation and were created after the subject RZR was manufactured and fall outside the previously agreed upon scope of discovery. Additionally, the Defendants state that although it previously produced CAD image documents, it has now produced the Model Program, which is a live program, not a static document, however, the CAD Model Program contains no new information that was not provided to the Plaintiffs, it only provides a different way to view the design documents. Also, the Defendants produced two FEA documents not previously produced, however, they were created on September 9, 2022, after the RZR was manufactured and after the

---

[6] The Defendants explain that macroetching is a destructive quality assurance test that is conducted on certain welds.

subject crash occurred; the data contained in these two documents had already been provided in the FEA materials produced on November 11, 2022.

Contrary to the Plaintiffs' contention that thousands and thousands of documents were dumped on them, the Defendants provided 154 documents on February 6 in response to their "good faith" letter, and 96 imaged documents, which included the 27 omitted design drawings, on February 10.

The Defendants further take issue with several "false accusations" the Plaintiffs made during the February 13 hearing: (1) that the Defendant produced thousands of pages of additional documents – it was a total of 229 pages of documents on February 10, 2023; (2) that they intended to withhold the design drawings provided to their own expert – the Defendants never tried to hide these, and did in fact produce these when alerted to their omission; (3) that CAD and FEA materials were never produced – these were produced on November 11, 2022, but not the CAD Model Program, but that has since been provided, it is not different from what was provided before, but it allows the design drawings to be viewed in a three dimensional format as opposed to simply as images; (4) that native files not produced – the Defendant produced 119 documents in native form on November 11, 2022 and supplemental productions on February 6, 2023; (5) that the Defendants knew the RZR control arms have been failing – the Defendants produced nine anecdotal claims relating to front control arms issues, but they do not show a history of control arm failures due to design or manufacturing issues, plus the Plaintiff relied on an FEA document authored by a Polaris employee in September 2022, created five years after the RZR was manufactured and two years after the crash. This study was made for later model vehicles and not for those using the platform subject to this case; and (6) that the Defendants did not produce alternate design documents for a

better A-arm – the Plaintiffs were focusing on vehicles that use a different platform and do not use the control arms relevant to the vehicle in this case.

Regarding the ten "Discovery Failures" identified by the Plaintiffs, the Defendants assert that when the inadvertent omissions were discovered, they promptly moved to correct the oversight and have produced all responsive materials, and as to the outstanding production requests that the Court ordered to be produced by March 15, the Defendants will produce same, although note that they concern other Polaris models that are not part of the same platform as the RZR and not interchangeable with the subject RZR's front lower arms. For all other identified "Discovery Failures", the Defendants have nothing more to produce.

The Defendants contend that circumstances do not justify the sanctions requested by the Plaintiffs – there is no evidence that the Defendants intended to withhold 27 design drawings, especially since they included them in their expert's report. They note that despite this omission, the Plaintiffs' own expert still stands by his analysis, opinions, and conclusions, showing that the oversight was cured and the Plaintiffs not prejudiced by it. Rule 26(e) provides that once a party learns that in some material respect the disclosure or response is incomplete or incorrect, there is a duty triggered to supplement, which the Defendants did.

The Defendants disagree with the Plaintiffs that all five factors espoused by the Fourth Circuit have been met here warranting the harsh sanctions they seek: for starters, the Plaintiffs are not surprised by the supplementation since the parties stipulated discovery motions and supplementation beyond the February 10, 2023 deadline, plus these drawings were referenced in drawings originally produced on November 11, 2022.

Even assuming the Plaintiffs are surprised by the supplementation, the Plaintiffs must take steps to cure the results of the alleged surprise, and the Defendants will not oppose any motion to

9

amend or stay the current Scheduling Order deadlines to accommodate the Plaintiffs' preparation for trial. The Plaintiffs already sought to reopen discovery to serve additional discovery requests, which the Court allowed, and the Defendants will be responding to same soon.

There is no evidence that the trial will be disrupted – the Plaintiffs' expert stands by his opinions, despite having been provided with supplemental discovery, and the disclosures deadline is not until April 4.

The Defendants further argue that the Plaintiffs exaggerate the importance of the supplemental disclosures – most of the disclosures they wanted were already provided, concern other Polaris models that are irrelevant to the matters raised herein, and at bottom, the Plaintiffs' expert has not revised his opinion.

Finally, the Defendants regret not having disclosed the pertinent design drawings, but once they realized the error, quickly took steps to remedy the mistake. The Defendants point out that the Plaintiffs did not file a motion to compel, and once they identified the missing design drawings, the Plaintiffs did not attempt in good faith to resolve the issues, but instead leveled accusations against the Defendants' counsel and sought extraordinary sanctions. The circumstances presented in this case do not align with this District's jurisprudence warranting such drastic sanctions. There is no evidence of bad faith or rampant discovery abuses by the Defendants or its counsel that justifies the Plaintiffs' requests that the A-arm Assembly be deemed defectively designed or manufactured or that the Defendants were negligent in designing and manufacturing the control arm assembly, let alone for adverse jury instructions or that the Defendants' expert's report be stricken in its entirety.

**The Plaintiffs' Reply in Further Support of Sanctions**

The Plaintiffs point out from the Defendants' Response that while they represented to the Court during the hearing that they produced certain relevant information to the Plaintiffs prior to December – the "Buckling Analysis" dated September 9, 2022, the Plaintiffs contend that they did not – the materials provided did not concern the lower A-arm assembly – thus, the FEA data produced on February 10, 2023 was not the same produced in November 2022. The Plaintiffs further argue that while the Defendants' counsel represented to the Court that they already produced documents that included the study provided by one of its engineers, Ben Gallup, however, his name does not appear on any documents produced prior to February 2023. The Plaintiffs insist that the Defendants have still not produced the Buckling Study, including the data used in the finite element analysis in its native format. The Plaintiffs argue that the Defendants' discovery abuses have prejudiced the Plaintiffs' prosecution of their claims.

Contrary to the Defendants' argument that the Plaintiffs made factual misrepresentations during the hearing before the Magistrate Judge, based on the discovery that the Defendants have since produced to the Plaintiffs, the Plaintiffs' representations are factually accurate and true.

Regardless, the Plaintiffs reassert that the only remedy in this case is the harshest of sanctions available under law, because even considering that the subset of documents the Defendants failed to produce is relatively limited, those documents still bear directly on the Plaintiffs' product liability claims. The Plaintiffs contend that the Defendants knew they failed to produce the design drawings pursuant to their Rule 26(a)(1) disclosures, and to attest otherwise is false, especially when their own expert requested them in April 2022. The Plaintiffs emphasize that the Defendants still have not identified what day their expert requested these drawings, with

11

whom their expert communicated, or who at Polaris located the additional design documents and how they ended up in their expert's possession without Bates numbers or a Confidential marking.

The Plaintiffs point out that a continuance would be akin to awarding the Defendants for their discovery abuses, and ignores the purpose of the Rules, which is to discourage this type of misconduct. The Plaintiffs restate that the sanctions requested are directly proportional to the impact of the Defendants' admitted discovery failures.

### Relevant Law

Rule 37(c)(1) of the Federal Rules of Civil Procedure provides that when a party fails to provide information or identify a witness as required by Rule 26(a) or (e), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." In addition, or instead of, this sanction, the Court may order the payment of reasonable attorney's fees and expenses caused by the failure; may inform the jury of the party's failure; and may even impose other appropriate sanctions endorsed under Rule 37(b)(2)(A):

> (i) Directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) Prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) Striking pleadings in whole or in part;
> (iv) Staying further proceedings until the order is obeyed;
> (v) Dismissing the action or proceeding in whole or in part; [or]
> (vi) Rendering a default judgment against the disobedient party[.]

Fed. R. Civ. P. 37(c)(1)(C).

The Court enjoys wide discretion to issue sanctions under Rule 37(c)(1), particularly when a party that fails to provide disclosures "unfairly inhibits its opponent's ability to properly prepare, unnecessarily prolongs litigation, and undermines the district court's management of the case." See Saudi v. Northrop Grumman Corp., 427 F.3d 271, 278 (4th Cir. 2005)(citing Southern States

Rack & Fixture, Inc., v. Sherwin-Williams Co., 318 F.3d 592, 595 (4th Cir. 2003)). The Court may exclude this evidence even if the non-disclosing party did not act in bad faith – this supports "what the Fourth Circuit has identified as the 'basic purpose' of Rule 37(c)(1), which is to prevent surprise and prejudice to the opposing party." See EQT Gathering, LLC v. Marker, 2015 WL 9165960, at *8 (S.D.W. Va. Dec. 16, 2015)(Johnston, J.)(citing Contech Stormwater Sols., Inc. v. Baysaver Techs., 534 F. Supp. 2d 616, 622 (D. Md. 2008)(quoting S. States Rock & Fixture, 318 F.3d at 596)).

The Fourth Circuit has provided the following five factors a court should consider under the exclusion analysis when determining whether a nondisclosure was "substantially justified" or "harmless" as described by the Rule 37, *supra*:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

Id., at *9 (quoting S. States Rock & Fixture, 318 F.3d at 597). The Fourth Circuit further explained that "[f]our of these factors ... relate mainly to the harmlessness exception, while the remaining factor – explanation for the nondisclosure – relates primarily to the substantial justification exception." S. States Rock & Fixture 318 F.3d at 597. "The burden of establishing these factors lies with the nondisclosing party[.]" Wilkins v. Montgomery, 751 F.3d 214, 222 (4th Cir. 2014) (citation omitted).

When considering a motion for attorneys' fees, the Supreme Court has instructed that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The Court's assessment of the requested award should include consideration of hours which were spent excessively, redundantly, or unnecessarily. Id. at

13

434. The starting calculation is referred to as the lodestar amount. Grissom v. The Mills Corp., 549 F.3d 313 (4th Cir. 2008). There are twelve factors that the Court must consider on the calculation of reasonable attorneys' fees:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Grissom, 549 F.3d at 321. Upon completion of this lodestar calculation, a "court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones." Grissom, 549 F.3d at 321 (quoting Johnson v. City of Aiken, 278 F.3d 333, 337 (4th Cir. 2002)). "Once the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." Johnson, 278 F.3d at 337.

## Discussion

As noted *supra*, the Plaintiffs' Motion for Sanctions was not preceded by a motion to compel, nevertheless, it is not lost on the Court that no hearing would have been necessary (let alone the volume of pleadings that have been filed since) had the Defendants simply included the design drawings they provided to their own expert as they were clearly responsive to the Plaintiffs' discovery requests. It would not have been necessary for the Plaintiffs to file the Motion for Sanctions had the Defendants timely responded to the discovery requests in the first place. Finally, having just realized that these clearly relevant documents were helpful to the Plaintiffs' case just prior to mediation created an inconvenience for all interested parties at the mediation – and set the

prosecution of these claims backward, since the parties will once again have to evaluate their claims should they attempt to mediate again.[7]

Given this procedural history, the Court "must" issue the appropriate sanction under Rule 37, which includes attorneys' fees. The question is which sanction is proper given the particular circumstances presented in this case. While bad faith is not a factor here, the undersigned is hard-pressed not to find that the Defendants acted in bad faith by failing to include the design drawings in their disclosures to the Plaintiffs – especially after having provided the same documents to their own expert. Counsel for the Defendants has represented that the omission was inadvertent, and that attempts to cure this mistake were taken immediately upon notice of the error by the Plaintiffs' counsel. However, there has been no explanation as to how this supposedly inadvertent omission was made and by whom. Notwithstanding the lack of adequate explanation, this does not absolve the Defendants from its responsibilities to the Plaintiffs or to this Court. In short, the Defendants' discovery conduct is not fully mitigated by some alleged oversight when the Federal Rules of Civil Procedure governing discovery and the language employed by this Court through its orders are quite clear as to what is expected of litigants in this Court.

With regard to the Plaintiffs' alleged surprise of the omitted evidence, clearly, this tainted the good faith efforts the Court expects from litigants when mediating a case and caused the Plaintiffs to have to pivot and rethink the value of their claims concerning product liability. While the Plaintiffs' expert's opinion had not changed since having an opportunity to review the omitted evidence, the additional disclosures produced this late in the litigation was a surprise and did

---

[7] It is for this reason that one of the sanctions that the undersigned orders below is that the Defendants should be responsible for the entire costs of the first mediation including the Plaintiffs' Counsel's time and expenses in preparing and attending the mediation. Clearly, from the evidence presented during the hearing and in the pleadings have resulted in the Court's conclusion that the Defendants' discovery failures resulted in the fruitless mediation.

15

'corroborate'[8] the opinions of the Plaintiffs' expert and "undermined" the opinions of the Defendants' experts– this tends to show that the information was clearly beneficial to the Plaintiffs' case, and denied the Plaintiffs the same opportunity as the Defendants to assess the strengths and weaknesses of their case for settlement purposes.

As for the ability of the Defendants to cure the surprise, this was relatively easy, as they have been able to provide the Plaintiffs the missing production or can provide it in quick fashion. While the Defendants have extended the Plaintiffs no resistance should they require additional time in this proceeding to allow their expert a chance to review the omitted evidence, obviously, that extends the time for this action to remain active on this Court's docket, which necessarily impacts the Court's ability to manage the case. In any event, the undersigned notes that no motion to continue the deadlines set forth in the Scheduling Order have been filed.

Finally, the Defendants have repeatedly represented to this Court that omitting this evidence from their production to the Plaintiffs was a regrettable oversight. While the undersigned is bothered that the Defendants disclosed this evidence to its own expert several months before realizing they failed to include it in their responsive production to the Plaintiffs, the undersigned is also not convinced that the Defendants' *Counsel* intended to deceive the Plaintiffs.[9]

---

[8] See ECF No. 101-1 @ ¶ 28, **_Affidavit of Dr. Marc Zupan, Ph.D_**.: "[T]he newly produced information corroborates my findings and undermines several of the opinions set forth by the Defense experts."

[9] The Plaintiffs' Counsel strongly condemned the motives of the Defendants' Counsel during the hearing on this issue. The undersigned was very troubled by the Plaintiffs' Counsel's allegations that the Defendants' Counsel, as opposed to the Defendants, acted intentionally and unethically. It would be a first for the undersigned to find that an officer of the Court, which all Counsel are, acted in such a willful, wanton, intentional and unethical manner as described by the Plaintiffs' Counsel. However, Plaintiffs' Counsel has not shown the undersigned **sufficient evidence** that the gross failures of discovery obligations in this case were due to the knowingly intentional and unethical conduct of the Defendants' Counsel. That should be distinguished from the clear failings of the Defendants to forthrightly provide the admitted relevant discovery that was not initially produced, for which there has been no good explanation.

Nevertheless, the Defendants' discovery misconduct has caused a slight delay in these proceedings, thus delaying the Plaintiffs' access to justice – but perhaps just as significantly, the misconduct has apparently put a damper on the relations between the parties' counsel which can cause a host of problems not only in this action but may extend to others the Court may preside over in the future. In any event, while the Court is mindful that the Defendants themselves first alerted this Court to the discovery problem and requested an expedited hearing and briefing to find a way to rectify the matter, the Court had to reopen discovery to allow the Plaintiffs to pursue production requests that they were entitled to over three months prior. Further, while the Plaintiffs did not have to file a motion to compel because the Defendants alerted to Court to the issue, clearly the discovery deadline had passed, causing the Plaintiffs to file the instant Motion seeking this Court's intervention in a straightforward discovery request. To be sure, there has not been much discovery conducted in this case, which indicates that the parties understood their respective claims and defenses, and that focused on one main issue. However, the Court was pulled into mediating a simple, yet contentious discovery request, thus, the Plaintiffs were prejudiced to the extent of having this proceeding delayed and to prosecute this discovery request.

In sum, the Court is troubled by the Defendants' discovery failures, but does not find that, ***at this stage of the litigation***,[10] this presents such a "flagrant" case necessitating the draconian measures envisioned by the Fourth Circuit. See, e.g., Wilson v. Volkswagen of Am., 561 F.2d 494, 504 (4th Cir. 1977), *cert. denied*, 434 U.S. 1020 (1978). However, the undersigned does believe that significant sanctions are appropriate. As noted by the parties, discovery has resumed for the

---

[10] It is difficult for the Court to assess whether the delay caused by the Defendants has resulted in the type of harm that would justify some of the more draconian sanctions the Plaintiffs have sought herein, however, as litigation progresses, should additional evidence of willfulness or bad faith akin to the conduct by the Defendants be discovered, the Plaintiffs are invited to renew their motion for the Court to reconsider the decision regarding the more serious sanctions.

limited purposes of obtaining materials that had not yet been provided to the Plaintiffs and while there has been no motion to continue or extend any other deadlines remaining in the Scheduling Order, it appears that the parties have not disturbed the material deadlines therein, indicating good preparation for the trial in this matter currently scheduled for May 15, 2023.

The Plaintiffs have requested several specific sanctions; while some of the requested sanctions are absolutely necessary, or required pursuant to the Rules of Federal Civil Procedure, the Plaintiffs have not established that some of the more severe sanctions are justified at this point. Specifically, the Plaintiffs have requested that certain "facts" be deemed "established for purposes of this action" (See ECF No. 65 at 19-20, ¶¶ 4, 5, 7; ECF No. 101 at 10, ¶¶ 4, 5, 7), however, the undersigned does not find the circumstances demonstrated herein warrant such sanctions.

Therefore, for the reasons aforesaid, the Court **FINDS** that the Plaintiffs' request that certain facts be taken as established for purposes of this action, are not an appropriate sanction in this case at this time.[11] Accordingly, the undersigned hereby respectfully **PROPOSES** that the District Judge confirm this foregoing finding and **RECOMMENDS**[12] that the District Judge **DENY** the Plaintiffs' requests for these particular sanctions.

Regarding the Plaintiffs' request that the Court inform the jury "of each and every instance of Defendants' discovery misconduct" (Id. at 19, ¶ 3; Id. at 10, ¶ 3), the undersigned **FINDS** that this sanction is appropriate in this case, and would serve as a deterrent not only to the Defendants herein, but to other litigants who withhold pertinent information from opposing parties but use for

---

[11] The Plaintiffs requested that the Court find: that the A-arm Assembly was defectively designed; that the A-Arm Assembly was defectively manufactured; that the Defendants were negligent in the design and manufacture of the A-arm Assembly; that the Defendants had actual knowledge that the A-arm Assembly was defective as of 2018; that the report of the Defendants' expert, Bastiaan E. Cornelissen, Ph.D., P.E., be stricken in its entirety; and that the Defendants' Confidential designation of all documents pursuant to the Protective Order be voided as the documents are directly related to public policy. (See ECF No. 65 at 19-20, ¶¶ 4, 5, 7; ECF No. 101 at 10, ¶¶ 4, 5, 7)

[12] Because the Plaintiffs have requested certain sanctions that concern matters within the purview of the District Judge, pursuant to 28 U.S.C. § 636, the undersigned makes these as recommendations.

Case 2:21-cv-00501 Document 137 Filed 03/16/23 Page 19 of 20 PageID #: 5033

their own benefit.[13] Accordingly, the undersigned hereby respectfully **PROPOSES** that the District Judge confirm this foregoing finding and **RECOMMENDS** that the District Judge **GRANT** the Plaintiffs' request for this particular sanction.

Regarding the Plaintiffs' request "that Defendants be required to produce all improperly withheld documents and information" (Id. at 20, ¶ 6; Id. at 10, ¶ 6) and while it should go without saying, to the extent that the Defendants have not yet produced responsive materials to the Plaintiffs, they are **ORDERED** to do so **FORTHWITH**, given that the original discovery deadlines in this matter have long expired.

With regard to the Plaintiffs' request for attorneys' fees, the Court **FINDS** that this sanction is not only appropriate, but also mandated by Rule 37 of the Federal Rules of Civil Procedure given the circumstances surrounding the ***Plaintiffs' Motion for Sanctions***. Therefore, pursuant to Rule 37, the Plaintiffs are invited to file the appropriate motion for their reasonable attorneys' fees and costs, including the fees and costs incurred by the Plaintiffs' expert, that were incurred in prosecuting the ***Motion for Sanctions*** as well as the ***Reply***, and are further instructed to outline the reasons why these fees and costs are appropriate and provide the Court with an accounting of the time counsel spent in prosecuting the Motion/Reply. The Defendants shall be allowed to file an appropriate pleading setting forth any objections to the accounting of time filed by the Plaintiffs. The Plaintiffs' pleading shall be filed within **14 days**. A response by the Defendants shall be filed within **7 days** after the Plaintiffs' pleading. The Plaintiffs may file a reply within **3 days** after the Defendants' response.

As an additional matter, while not specifically requested by the Plaintiffs, the undersigned

---

[13] The undersigned does not recommend the precise language that such an instruction should include as the parties are represented by very skilled counsel who will be able to fashion the appropriate instruction should this recommendation be upheld by the District Judge.

19

also finds that the Defendants should be entirely responsible for the costs of the prior mediation. The undersigned finds that the mediation was clearly unproductive directly due to the discovery failures of the Defendants that were not discovered by the Plaintiffs until the eve of the mediation. The "costs" should include not just the mediator's fee, but also should include the time and expenses of Plaintiffs' counsel in preparing for the mediation and the time expended at the mediation. The Plaintiffs should specify these "costs" in the accounting of time referenced above to which the Defendants will be able to object in the timeframe provided above.

Accordingly, the Plaintiffs' *Motion for Sanctions* (ECF No. 65) is **DENIED in PART and GRANTED in PART** as set forth herein.

In accordance with Rule 72(a) of the Federal Rules of Civil Procedure, the ruling set forth above on this non-dispositive Motion may be contested by filing within 14 days, objections to this Order with District Judge Irene C. Berger. If objections are filed, the District Court will consider the objections and modify or set aside any portion of the Order found clearly to be erroneous or contrary to law.

The Clerk is requested to distribute a copy of this Order to all counsel of record.

**ENTER: March 16, 2023.**



Omar J. Aboulhosn
United States Magistrate Judge