**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

FRED M. LOMANGINO, et al.,

                Plaintiffs,

v.                                                    CIVIL ACTION NO.   2:21-cv-00501

POLARIS INDUSTRIES INC., et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Order and Proposed Findings and Recommendations* (Document 137), *Polaris' Objections to Report and Recommendations* (Document 138), and the *Plaintiffs' Reply to Polaris' Objections to Report and Recommendation* (Document 139).   The Court has also reviewed the underlying briefing, including the *Plaintiffs' Motion for Sanctions Against Defendants* (Document 65), *Polaris' Preliminary Response to Plaintiffs' Motion for Sanctions* (Document 74), *Polaris' Position Paper Concerning Inadvertent Document Production Omissions* (Document 80), the *Plaintiffs' Supplement to Plaintiffs' Motion for Sanctions Against Defendants* (Document 83), *Polaris' Response to Plaintiffs' Motion for Sanctions* (Document 97), and the *Plaintiffs' Reply to Polaris' Response to Plaintiffs' Motion for Sanctions* (Document 101), as well as all exhibits.

In addition, the Court has reviewed the *Plaintiffs' Second Motion for Sanctions Against Defendants* (Document 140), *Polaris' Response to Plaintiffs' Second Motion for Sanctions* (Document 143), and the *Plaintiffs' Reply to Polaris' Response to Plaintiffs' Second Motion for*

*Sanctions Against Defendants* (Document 147).   The Court has also considered the argument and testimony presented during the May 10, 2023, hearing.

The first motion for sanctions was referred to the Honorable Omar J. Aboulhosn, United States Magistrate Judge.   Judge Aboulhosn held a hearing on February 13, 2023, and issued his Order and PF&R on March 16, 2023.   After the Court granted a request for additional time, Polaris filed objections on April 7, 2023.   The Plaintiffs filed their second motion for sanctions on April 13, 2023, and the Court did not refer that motion in an effort to permit efficient resolution of both the objections and the second motion.   All briefing on both motions and objections is complete, although some discovery is ongoing.

## FACTUAL FINDINGS

This lawsuit centers on alleged design and manufacturing defects in a 2018 Polaris RZR Utility Terrain Vehicle (UTV).   Specifically, the Plaintiffs allege that the lower control arm was defectively designed and manufactured.   The Plaintiffs allege that those defects caused a crash in 2020 in which they suffered injuries.   They initiated this lawsuit on September 7, 2021.   Initial disclosures were due December 16, 2021.   In March 2022, Polaris's expert, Dr. Cornelissen, requested design drawings for subcomponents of the front-end suspension.   Polaris had design drawings with varying levels of specificity, from a fully-assembled technical drawing of the front end suspension to subcomponents with their own drawings, which were listed in a legend on the fully-assembled drawing.   Many of the subcomponent drawings likewise contained legends detailing subcomponents with their own drawings.

Polaris's in-house paralegal, Traci Ketring, began handling document requests between the time the initial disclosures were produced and the time Dr. Cornelissen made his request.   She

pulled the requested documents and emailed them to Chris Cashen, Polaris's outside counsel handling this litigation, to be provided to the expert.   Mr. Cashen forwarded the documents to Polaris's expert but did not provide those documents to counsel for the Plaintiff at that time.

The Plaintiffs filed document requests in October 2022.   Based on her conversation with counsel, Ms. Ketring understood the request to include the front-end suspension design drawings, including drawings for the 38 subcomponents included in the fully-assembled design drawing for the front suspension on the subject vehicle.   She intended to upload all of them, but mistakenly excluded four subcomponent drawings.   The excluded drawings include components of the upper and lower control arms, which are central to the litigation, and which were among the documents provided to Polaris's expert in March 2022.   Including subcomponent drawings that Ms. Ketring would have pulled based on the legends of the four excluded drawings, a total of 27 drawings were not uploaded.

Ms. Ketring uploaded documents to Relativity, a platform that allowed outside counsel to review them and code the documents for confidentiality, privilege, and responsiveness.   Polaris retained Cimplifi, an e-Discovery service provider, to assist with document production.   After Ms. Ketring uploaded documents to Relativity, Cimplifi "prepared materials and documents for production to opposing counsel and marks responsive materials and documents with Bates numbers, confidential designations, and other designations for production."   (Perlstein Aff. at ¶ 8) (Document 154.)   It is not clear how much oversight Polaris's counsel exercised in the discovery process, despite signing the certificates of service verifying the discovery responses.

The Plaintiffs sent a "good faith" letter on December 7, 2022, contending that Polaris had not fully responded to the discovery requests and asserting various discovery deficiencies.   Polaris

responded on January 20, 2023, with a letter stating that it had produced all responsive materials and standing by its Response, including specifically claiming that it had "already produced all design documents for the Front Suspension Assembly of the Model Year 18 RZR Turbo Champ Platform." (Jan. 20, 2023 Polaris Letter at 4) (Document 65-4.) Outside counsel for Polaris did forward the Plaintiffs' good faith letter to Ms. Ketring, but without a directive to take any actions in response to it, such as confirming that all responsive materials had, in fact, been uploaded. Accordingly, Ms. Ketring reviewed the letter but did not review the files she had previously uploaded to confirm that everything had been included.

Discovery closed on January 30, 2023. On February 3, 2023, the Defendants disclosed the report of their expert, Dr. Cornelissen. Dr. Cornelissen's report included two design drawings for parts of the lower A-arm assembly that were not previously disclosed to the Plaintiffs. The parties attended a previously scheduled mediation on February 6, 2023, although efforts to resolve the case were derailed by the discovery issues. On the evening of February 6, 2023, counsel for Polaris sent Plaintiffs' counsel an email with a link to previously undisclosed materials. Those materials contained references to additional materials that the Plaintiffs have since sought, including design documents, CAD Models, Finite Element Analysis (FEA), and other technical data. Because of the nature of the undisclosed materials, there is no precise number of pages to reference. Nonetheless, a substantial quantity of discoverable material central to the allegations in this case was not timely disclosed, went undisclosed following the good faith letter, and was identified only after the Plaintiffs received the expert report from Dr. Cornelissen. In total, the Plaintiffs indicate that they received fourteen times more data after the close of discovery than during discovery.

4

The Defendants produced a document entitled "Suspension Buckling Benchmarking Champ Front Suspension," authored by Ben Gallup, in PDF format, as part of the February 2023 production.  The Buckling Study was dated September 9, 2022.  The Buckling Study analyzed the risk of buckling in control arms in various Polaris models.  The Plaintiffs sought the underlying data but encountered difficulty receiving native format materials that could be used by their expert.  In their March 15, 2023 response to a motion for partial summary judgment, they noted that Polaris had not produced native files of the FEA data related to the Buckling Study. Judge Aboulhosn directed that any responsive materials not yet produced be provided to the Plaintiffs forthwith in his Order and Proposed Findings and Recommendations of March 16, 2023. The Plaintiffs' counsel emailed defense counsel on March 21, 2023, specifically requesting FEA models related to the Buckling Study.   Polaris produced some, but not all, native data on March 31, 2023.   On April 13, 2023, the Plaintiffs filed their second motion for sanctions, alleging that Polaris had failed to produce FEA data in the native format.  They finally received accessible native files on April 27, 2023.   During the hearing, the parties agreed to cooperate with respect to some ongoing discovery related to the late disclosures, including depositions.   However, the parties continue to dispute the existence of tabulated data for the FEA.

## STANDARD OF REVIEW

### A.  PF&R

The Federal Magistrates Act requires a district court to conduct a *de novo* review upon the record of any portion of the proposed findings and recommendations to which written objections have been made.   28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b).   Conversely, a district court is not required to review, under a *de novo* or any other standard, the factual or legal

conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 149-50 (1985); *see also Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983) (holding that districts courts may adopt proposed findings and recommendations without explanation in the absence of objections). A district court judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1) (2006). A district court's authority to choose among these options is independent of the statutory duty to afford review to those portions to which objections are addressed. *See Camby*, 718 F.2d at 199-200 ("If no objections were made, for example, it could hardly be argued that the judge must accept the [magistrate judge's] report if it contained an error of law apparent on its face."). As such, it is wholly within the district court's discretion to accept, reject, or modify a magistrate judge's proposal irrespective of any objections by the parties. *See United States v. Raddatz,* 447 U.S. 667, 676 (1980). Running parallel with district courts' discretion under the Federal Magistrates Act is the responsibility to ensure the just disposition of matters referred to magistrate judges. *See Mathews v. Weber*, 423 U.S. 261, 271 (1976); *see also Raddatz*, 447 U.S. at 683.

### B. Appeal

The assignment of non-dispositive discovery matters to a magistrate judge is governed by Rule 72 of the Federal Rules of Civil Procedure. Rule 72 stipulates that, when a party objects to a non-dispositive ruling by a magistrate judge, "[t]he district judge in the case must…modify or set aside any part of the order that is clearly erroneous or is contrary to law." Federal Rule of Civil Procedure 72(a). In the Fourth Circuit, a magistrate judge's finding is "clearly erroneous" where "although there is evidence to support it, the reviewing court on the entire evidence is left

with the definite and firm conviction that a mistake has been committed." *Clark v. Milam*, 155 F.R.D. 546, 547 (S. D. W.Va. 1994).   Findings of facts by a magistrate judge must be affirmed by the district court "unless … review of the entire record leaves … the definite and firm conviction that a mistake has been committed." *Clark*, 155 F.R.D. at 548, quoting *Harman v. Levin*, 772 F.2d 1150 (4th Cir. 1984).   The standard of review for "contrary to law," however, is different. "[F]or questions of law, there is no practical difference between review under Rule 72(a)'s 'contrary to law' standard and [a] de novo standard." *HSBC Bank USA, Nat. Ass'n v. Resh*, 2014 WL 317820, at *7 (S. D. W.Va. January 28, 2014) (Chambers, C.J.) (slip op.), quoting *Robinson v. Quicken Loans Inc.*, 2013 WL 1704839, at *3 (S. D. W.Va. Apr. 19, 2013) (Chambers, C.J.).

## DISCUSSION

Judge Aboulhosn found that Polaris did not meet its discovery obligations, and that its failure to timely produce responsive, obviously relevant discovery material prevented the parties from engaging in a good faith, productive mediation.   He also found that the discovery misconduct caused delay and resulted in the reopening of discovery.   Judge Aboulhosn declined to impose sanctions that would deem certain facts established for purposes of the action, including that the A-arm assembly was defectively designed and manufactured, that the Defendants were negligent in the design and manufacture of the A-arm Assembly, and that the Defendants had actual knowledge that the A-arm Assembly was defective as of 2018.   He also declined to strike the report of the Defendant's expert, Dr. Cornelissen, or to void the confidential designation pursuant to the protective order entered in this case.   He recommended that the Court inform the jury of each and every instance of the Defendants' discovery misconduct.   He ordered that the Defendants produce any outstanding responsive documents forthwith.   He also granted the

request for attorneys' fees associated with the motion, including those incurred by the Plaintiffs' expert, and additionally found that the Defendants should be responsible for the entirety of the costs associated with the prior mediation.   The parties have submitted briefing to Judge Aboulhosn with calculations and arguments related to the fee award, which has not been resolved.

Polaris objects, particularly to the recommendation that the jury be informed of its discovery misconduct.   It also argues that the award of costs and fees is inappropriate and that the Plaintiffs' fee request is excessive.[1]   Polaris notes that the Plaintiffs filed the motion for sanctions without first filing a motion to compel or cooperating with the Defendants to obtain the documents at issue.   It emphasizes that the failure to produce the responsive documents was an inadvertent error, not an intentional or bad faith effort to withhold the documents.   Polaris notes that the Plaintiffs did not identify specific missing documents that had not been produced until after receipt of the expert report.   It argues that the Plaintiffs were not prejudiced because (a) it made various accommodations to permit the Plaintiffs time to use the newly disclosed material and (b) the Plaintiffs' expert indicates that the new material did not change his ultimate opinions.   Finally, it argues that the instruction sanction is drastic and severe and could only be warranted by more willful and repeated conduct.   Polaris contends that Judge Aboulhosn erred factually by suggesting that its discovery failures may have been intentional.   Polaris's arguments with respect to the second motion for sanctions mirror its objections: It contends that the failure to supply native-format FEA documents was simply a mistake that it promptly rectified when the Plaintiffs adequately explained the issue to counsel.

---

1 As discussed below, the Court finds that the fee award is warranted by the facts.   Judge Aboulhosn has not yet resolved disputes related to the proper calculation, and the Court therefore will not address that issue.

The Plaintiffs argue that Judge Aboulhosn rightly highlighted the lack of an explanation for Polaris's failure to disclose the materials.   They point out that the quantity of undisclosed documents far exceeds the two design drawings discovered through the expert report.   They argue that the need for severe sanctions is further demonstrated by Polaris's ongoing failure to provide all data related to the Buckling Study.   The Plaintiffs emphasize that they could not file a motion to compel or be more specific about the missing documents because they did not know they existed until reviewing the expert report, given that Polaris assured them that it had provided all responsive documents.   They argue that sanctions under Rule 37(c)(1) require that the nondisclosure be without substantial justification and harmful, but does not require bad faith.   They contend that they were harmed because they have had to conduct additional discovery after the close of the normal discovery process, trial has been delayed, and they were unable to timely seek summary judgment on certain claims or file other pre-trial motions based on the undisclosed documents. With respect to the second motion for sanctions, the Plaintiffs emphasize their repeated attempts to obtain the materials at issue, including after Judge Aboulhosn ordered that all remaining responsive material be produced.   They request that the Court require Polaris to pay their attorney fees and costs in bringing the second motion for sanctions, pay their expert witness fees and costs as a result of Polaris' failure to comply with Judge Aboulhosn's Sanctions Order, inform the jury of each and every instance of Polaris's discovery misconduct, and designate the following facts to be treated as established: that the A-arm assembly was defectively designed; that the A-arm assembly was defectively manufactured; that the Defendants were negligent in the design and manufacture of the A-arm assembly; and that the Defendants had actual knowledge that the A-arm was defective as of 2018.

Rule 37 of the Federal Rules of Civil Procedure addresses situations in which a party fails to make disclosures or cooperate in discovery.   The Plaintiffs seek sanctions pursuant to Rule 37(c)(1), which provides for sanctions "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e)."   Fed. R. Civ. P. 37(c)(1).   Sanctions may include the following: barring the party from using the information or witness "unless the failure was substantially justified or is harmless," ordering "payment of the reasonable expenses, including attorney's fees, caused by the failure; "inform[ing] the jury of the party's failures," directing that designated facts be taken as established for purposes of the action, barring "the disobedient party from supporting or opposing designated claims or defenses, "striking pleadings in whole or in part," "staying further proceedings until the order is obeyed," "dismissing the action or proceeding in whole or in part;" or "rending a default judgment against the disobedient party."   Fed. R. Civ. P. 37(c)(1), 37(b)(2)(A)(i)(vi).

The Fourth Circuit explained that substantial justification for the failure to disclose and harmlessness are exceptions to the general rule requiring sanctions under Rule 37(c)(1).   *S. States Rack And Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003).

> [I]n exercising its broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Id.* at 597.   "Rule 37(c)(1) does not require a finding of bad faith or callous disregard of the discovery rules."   *Id.* at 596.   The primary goal of Rule 37(c)(1) is "preventing surprise and

prejudice to the opposing party."

The Court finds that Judge Aboulhosn's Opinion and PF&R properly analyzed the applicable test for sanctions.   With the benefit of the additional information presented during the May 10, 2023 hearing, it is even more clear that Polaris's failure to timely disclose the evidence at issue was not substantially justified.   Ms. Ketring's initial omission of the design drawings at issue may be classified, as Polaris argues, as an honest mistake.   That does not explain why it was not provided months earlier, when it was provided to the Defendant's expert, why other extensive additional responsive material was not disclosed, or the continued failure to disclose the materials when the Plaintiffs informed defense counsel that they did not believe they had received all responsive discovery.   The discovery failures related to both the first and second motions for sanctions continued despite repeated requests by the Plaintiffs for all responsive materials.

Although Polaris uses a third-party vendor for discovery management, the litigant and its attorney are ultimately responsible for complying with the Federal Rules of Civil Procedure and court orders.   Polaris and its counsel appear to have simply presumed there were no errors or missing documents when they received the good faith letter, as well as various emails and communications from Plaintiffs' counsel, instead of making the necessary effort to confirm that all responsive documents had been turned over.   Indeed, Polaris and its counsel had an obligation to ensure that discovery responses were complete when they were made in the first instance, rather than simply relying on a non-attorney employee at Polaris and the vendor.   Continuing—even months after the close of discovery and weeks after learning that substantial amounts of responsive material had not been properly produced—to offer dismissive responses to the Plaintiffs' complaints about not receiving usable native-format files demonstrates a blatant disregard for

those obligations.   Polaris's efforts, including during the May 10 hearing, to place the burden of identifying the specific missing documents on the Plaintiffs, despite its continuous statements at the time that all responsive material had been produced, further exemplify its contempt for the discovery process.   In short, Polaris's explanation for its failure to disclose falls woefully short of adequate justification.

Judge Aboulhosn's reasoning regarding harmlessness is likewise free from error and well-supported by the evidence presented to him and the evidence subsequently presented to this Court. The evidence of engineering materials related to the precise part alleged to have failed and caused the Plaintiffs' injuries is central to this litigation. The remaining factors are an imperfect fit for cases such as this one, in which the undisclosed evidence is useful to the receiving party. Although the Plaintiffs consider the late-disclosed evidence to be beneficial to their case, the failure to timely disclose it required their expert to perform substantial extra work, then redo much of his work after receiving the material that the Defendant provided to its own expert months earlier.   Mediation was derailed because the Plaintiffs had just learned of the undisclosed documents.   The Plaintiffs have had to essentially restart discovery and rework their litigation strategies after discovery had closed, in the midst of briefing motions for summary judgment and motions in limine and preparing for trial.   Trial was scheduled for May 15 and continued only because previous lead counsel for the Defendant suffered health problems.   The Plaintiffs were *still* attempting to obtain data relevant to their case at least into late April and contend that some data had not been turned over even as recently as the May 10 hearing.   The late disclosures have necessitated amendments to the Plaintiffs' expert report, additional discovery requests, and additional depositions.

12

The sanctions ordered and recommended by Judge Aboulhosn are justified as to the first sanctions request.  Monetary sanctions are appropriate to help remedy the costs incurred by the Plaintiffs as a result of the Defendant's discovery misconduct.  The Court concurs with Judge Aboulhosn's conclusion that costs related to the first mediation, in addition to the motion for sanctions, should be borne by the Defendants because their discovery failures caused mediation to be unproductive.  The egregious nature of the misconduct warrants the additional sanction of a jury instruction, though as discussed further below, the Court will withhold determination as to the nature and appropriateness of such an instruction until after reviewing proposals from the parties prior to trial.

The Court finds that these sanctions are likewise justified as to the second sanctions request.  The discovery misconduct followed the same pattern, even after the Defendant had been fully alerted to issues with undisclosed documents and problems with Cimplifi's ability to ensure that the Plaintiffs received native format files.  Again, Polaris's refusal to promptly investigate and remedy the problem when the Plaintiffs repeatedly complained of lack of access to native format files caused delay and expense for the Plaintiffs, forcing them to file a motion for sanctions in order to finally receive material they should have received months ago.  This failure to properly disclose evidence also occurred *after* Judge Aboulhosn had ordered that the material at issue be turned over forthwith.  Therefore, the Court will order Polaris to pay the Plaintiffs' attorney fees and costs associated with the second motion for sanctions and any expert costs incurred in relation to the motion.  Any jury instruction may also include the discovery misconduct outlined herein as to the second motion for sanctions.

13

Although the continued failure to comply with discovery rules even after Judge Aboulhosn's order is an exacerbating factor, the Court does not find the additional sanctions requested by the Plaintiff to be warranted. While serious, the discovery failures will not prevent the Plaintiffs from fairly trying their case. Treating certain claims as established is an extremely severe sanction. While the Defendants' continued and repeated failure to turn over responsive materials is unjustifiable, they have ultimately provided the material and a trial on the merits remains possible. The harm caused by their discovery misconduct can be corrected with lesser sanctions, and so the Court refuses to impose these additional, more severe sanctions.

With respect to the sanction of a jury instruction, the Court will hold in abeyance any determination as to the precise nature and form of such an instruction, and when and in what context it may be offered to the jury. Such an instruction has the potential to be confusing to the jury if it provides information about discovery misconduct without any corresponding instruction about the relevance of that misconduct to the jury's role in resolving the issues in dispute. The parties will have an opportunity to propose sanction-related instructions that address relevant time and context. In addressing the motion for partial summary judgment with respect to punitive damages, the Court noted that evidence related to the discovery misconduct could be admissible in connection with the punitive damages claim and offering the instruction in that context may help limit potential jury confusion.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *Polaris' Objections to Report and Recommendations* (Document 138) be **OVERRULED**, that the *Order and Proposed Findings and Recommendations* (Document 137) be **ADOPTED**, and that

14

the *Plaintiffs' Motion for Sanctions Against Defendants* (Document 65) be **GRANTED** as set forth herein.   The Court further **ORDERS** that the *Plaintiffs' Second Motion for Sanctions Against Defendants* (Document 140) be **GRANTED** as set forth herein.   The Court additionally **ORDERS** that the fee calculation resulting from the second motion for sanctions be **REFERRED** to Judge Aboulhosn.   The Court **ORDERS** that the Plaintiffs file their fee request with appropriate documentation within **five (5) days** of entry of this Order and that the Defendant file any response within **5 days** after the Plaintiffs' filing.

Finally, in light of the finding that the parties were unable to engage in productive settlement discussions during the first mediation, as well as the additional rulings that have been issued since that time, the Court **ORDERS** that the parties engage in a second mediation within **forty-five (45 days)** of entry of this Order.

ENTER:    May 31, 2023

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

15