IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

FRED M. LOMANGINO, et al.,

           Plaintiffs,

v.   CIVIL ACTION NO. 2:21-cv-00501

POLARIS INDUSTRIES INC., et al.,

           Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Polaris' Motion in Limine to Preclude Plaintiffs' Expert Dr. Keith Benoff from Testifying Regarding New Opinions Not Disclosed in His Expert Report* (Document 116), to which no response was filed. The Court has also reviewed the *Plaintiffs' Motion in Limine To Exclude All Evidence of Plaintiff Charles Lomangino's Failure to Wear His Seatbelt* (Document 117) and *Polaris' Response to Plaintiffs' Motion in Limine to Exclude all Evidence of Plaintiff Charles Lomangino's Failure to Wear His Seatbelt* (Document 122). Finally, the Court has reviewed *Polaris' Motion in Limine to Exclude All Post-Manufacture Design and Development Information and Documents* (Document 119) and the *Plaintiffs' Response in Opposition to Polaris' Motion in Limine to Exclude All Post-Manufacture Design and Development Information and Documents* (Document 123).

    A. New Expert Opinions Not Disclosed in Report

Polaris urges the Court to exclude new expert testimony from the Plaintiffs' damages expert, Dr. Keith Benoff, that was not disclosed in his report. Dr. Benoff is a psychologist who

examined Charles Lomangino and submitted a report detailing test results and opining that some reduced scores were attributable to the accident. During his deposition, Dr. Benoff offered the additional opinions that Charles Lomangino's condition was not expected to improve. Polaris seeks to preclude Dr. Benoff from offering opinions regarding Charles Lomangino's prognosis.

Rule 26(a)(2) requires expert reports to contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). The Plaintiffs did not respond to this motion in limine, and therefore have not provided any basis on which the Court could find the contested evidence to be admissible. Accordingly, after careful consideration, the Court finds that the motion in limine to preclude Dr. Benoff from testifying as to opinions not expressed in his report should be granted.

### B. *Post-Manufacture Design and Development Information*

Polaris further moves to exclude all evidence of post-manufacture design and development information and documents. Polaris argues that design development and documents relating to front suspension systems designed and developed after the Plaintiffs' vehicle was manufactured are irrelevant, confusing, prejudicial, and constitute subsequent remedial measures. It emphasizes that "strict product liability claims focus on the time when the product was manufactured, not afterwards." (Def. Mot. at 4) (Document 119.) The Plaintiffs argue that the later-developed designs are admissible if they were possible and economically feasible at the time the subject vehicle was manufactured. They argue that the Buckling Study, which Polaris suggests should be excluded because it was conducted years after the subject vehicle was manufactured, is relevant because it includes testing "that shows the performance characteristics of the lower-A-arm design at issue." (Pl. Resp. at 3) (Document 123.)

2

Rule 407 provides:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: negligence, culpable conduct, a defect in a product or its design, or a need for a warning or instruction. But the court may admit this evidence for another purpose, such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures.

The Court finds that post-manufacture designs and development information and documents may be relevant and admissible for some purposes, though not to prove negligence or a product or design defect.[1]  Therefore, the Court will hold the motion in abeyance and require counsel for the Plaintiffs to approach the Court, outside the presence of the jury, with a proffer as to the specific post-manufacture design and development evidence and its purpose prior to introducing or discussing such evidence.

### C. Seatbelt Usage

The Plaintiffs seek to exclude evidence that Charles Lomangino was not wearing a seatbelt at the time of the accident.  They contend that the failure to wear a seatbelt is not an intervening or concurrent cause of the crash that caused Mr. Lomangino's injuries.  Therefore, they argue that it is not admissible for the purposes of establishing comparative fault, failure to mitigate damages, and causation.  Polaris argues that failure to wear a seatbelt is admissible under West Virginia law because state law required seatbelt usage on the Hatfield-McCoy trail.  It argues that statutes and

---

[1] Rule 407 limitations on admissibility do not apply to testing of the A-arm and other suspension components used on the subject vehicle, even testing that was not performed until after the manufacture date.  The Buckling Study discussed by the parties contains both information about designs used after the subject vehicle was manufactured and information about the subject vehicle and related designs in use at the time of manufacture.  Polaris may proffer other objections to introduction of evidence about later-performed testing of components of the subject vehicle, but the Court's ruling herein prohibiting the Plaintiffs from introducing post-manufacture design evidence without first making a proffer to the Court outside the presence of the jury is applicable only to designs used after the manufacture date of the subject vehicle, not post-manufacture testing of the components at issue.

3

precedent addressing admissibility of seatbelt usage for passenger vehicles are not applicable, and Charles Lomangino's failure to wear a seatbelt is relevant and admissible as evidence of comparative fault.

In order to address this question, some background review is in order. At the outset, the problem surrounding the admissibility of seat belt non-use is not a new problem, but it is a sticky one. As another court has observed:

> Enough has been written about the "seat-belt defense" to show the body of law related to it is split, fragmented and changing. It varies in time, place, rationale, effect and implementation. No doubt the law varies so much because the theory does not fit neatly into traditional tort doctrines of negligence (including duty, breach of duty and causation), strict liability, contributory negligence, mitigation of damages, avoidance of consequences, and comparative fault.

*LaHue v. Gen. Motors Corp.*, 716 F. Supp. 407, 410 (W.D. Mo. 1989); *see also Connelly v. Hyundai Motor Co.*, 351 F.3d 535, 545 (1st Cir. 2003).

In 1989 the West Virginia Supreme Court of Appeals expressed its own degree of vexation with the seat belt defense in *Wright v. Hanley*, where the Court refused to "impose a penalty on the occupant who chooses not to wear a seat belt." 387 S.E.2d 801, 803 (W. Va. 1989). In reaching its decision, the court was compelled to side with the logic of the Oregon Court of Appeals, which stated "adopting a rule that exonerates defendants from liability for injuries sustained in accidents caused by their negligence—regardless of their degree of fault—would constitute the judicial imposition of a 'duty' to wear a seat belt that could lead to unfair and anomalous results." *Wright v. Hanley*, 387 S.E.2d 801, 804 (W. Va. 1989) (citing *Morast v. James*, 87 Or. App. 368, 742 P.2d 665, 666 (1987)).

The court also cited concerns including that there is no duty to mitigate damages prior to sustaining an injury, a defendant must take the plaintiff as it finds him or her and seatbelt evidence

leads to excessive speculation by jurors and thusly invites "verdicts on prejudice and sympathy contrary to the law." *Wright v. Hanley*, 387 S.E.2d 801, 804 (W. Va. 1989). Ultimately, the West Virginia Supreme Court yielded the question to the West Virginia Legislature, finding it more apt than jurors to "analyze the variables presented in failing to buckle a seat belt upon entering an automobile for normal, everyday driving." *Id.* The Court would not chart further course "[i]n the absence of a mandatory statutory duty to wear seat belts," and concluded that it was error for a circuit court to give a seat-belt instruction. *Id.*

Heeding the call, in 1993 the West Virginia Legislature answered the question by enacting W. Va. Code § 17C-15-49. Minor amendments were made in 2013, and at the time of the crash in this case,[2] the relevant language of the statute read:

> (a) A person may not operate a passenger vehicle on a public street or highway of this state unless the person, any passenger in the back seat under eighteen years of age, and any passenger in the front seat of the passenger vehicle is restrained by a safety belt meeting applicable federal motor vehicle safety standards. For the purposes of this section, the term "passenger vehicle" means a motor vehicle which is designed for transporting ten passengers or less, including the driver, except that the term does not include a motorcycle, a trailer, or any motor vehicle which is not required on the date of the enactment of this section under a federal motor vehicle safety standard to be equipped with a belt system.
> . . .
> (d) A violation of this section is not admissible as evidence of negligence or contributory negligence or comparative negligence in any civil action or proceeding for damages, and is not admissible in mitigation of damages: *Provided*, That the court may, upon motion of the defendant, conduct an in camera hearing to determine whether an injured party's failure to wear a safety belt was a proximate cause of the injuries complained of. Upon a finding by the court, the court may then, in a jury trial, by special interrogatory to the jury, determine: (1) That the injured party failed to wear a safety belt; and (2) that the failure to wear the safety belt constituted a failure to mitigate damages. The trier of fact may reduce the

---

2 The Legislature charted a more comprehensive course in 2021, when it abrogated W. Va. Code § 17C-15-49(d) and penned W. Va. Code § 17C-15-49a. The new section created novel categories of passengers while also offering additional guidance for when seat belt non-use is admissible. However, the new section only applies to collisions occurring on or after July 6, 2021, and the subject crash occurred on October 9, 2020.

> injured party's recovery for medical damages by an amount not to exceed five percent thereof. In the event the plaintiff stipulates to the reduction of five percent of medical damages, the court shall make the calculations and the issue of mitigation of damages for failure to wear a safety belt may not be presented to the jury. In all cases, the actual computation of the dollar amount reduction shall be determined by the court.

W. Va. Code § 17C-15-49. The West Virginia Supreme Court then had another chance to address the seatbelt defense in *Miller v. Jeffrey*, 576 S.E.2d 520, 524 (W. Va. 2002). In *Jeffrey*, both parties agreed that although the plaintiff was not wearing a seatbelt, W. Va. Code § 17C-15-49 did not apply because the automobile collision occurred on a private access road. 576 S.E.2d 520, 524 (W. Va. 2002). Because the relevant statutory language did not apply, the court found itself "in a posture very similar to that of *Wright*." *Id.* Accordingly, the court did not change course and relied on its default position that "[i]n the absence of a mandatory statutory duty to wear seat belts, evidence of plaintiff's failure to wear a seat belt is not admissible." *Id.* at 523. The court's ultimate holding was "when our mandatory seatbelt statute, West Virginia Code § 17C–15–49 (1993), is inapplicable, evidence of a plaintiff's failure to wear a seatbelt is not admissible in a negligence action to assess plaintiff's percentage of fault or to show plaintiff's failure to mitigate damages." *Id*. at 524.

It is this language in *Jeffrey* that Plaintiff Charles Lomangino latches on to. Specifically, this Plaintiff argues that the crash occurred on a portion of the Hatfield-McCoy Trail system named the Bear Wallow Trail, which does not constitute a "public street or highway" as required by West Virginia Code § 17C–15–49. On this point, the Defendants agree—West Virginia Code § 17C–15–49 does not apply to this case. (Def. Resp. at ¶ 30.) (citing W. Va. Code § 17F-1-1(c); *State ex rel. Sergent v. Nibert*, 220 W. Va. 520, 524 (W. Va. 2007)).

6

However, the parties' agreement does not last. Plaintiff Charles Lomangino argues that the inapplicability of § 17C–15–49 ends the analysis, and because it does not apply, the seat belt defense is precluded by *Jeffrey*. The Defendants argue that although § 17C–15–49 is inapplicable, another statute, W. Va. Code § 20-14-8(l), is. Section 20-14-8(l) states that on the Hatfield-McCoy Trail:

> A person may not operate or ride in a utility terrain vehicle, as defined in § 17F-1-1 et seq. of this code, or any other motor vehicle with bench or bucket seating and a steering wheel for control unless equipped with seat belts meeting at a minimum federal motor vehicle safety standard and properly worn by the driver and all passengers.

The Defendants argue that the Legislature's requirement to wear a seat belt when riding in a utility terrain vehicle (UTV) makes the Plaintiff's non-use of his seatbelt relevant and admissible.

The relevance of the Plaintiff's seat belt non-use hinges on whether it would go to any fact in issue. Fed. R. Evid. 401. The substantive law of West Virginia will determine whether seat belt non-use is relevant or not as to the Plaintiff's state law claims. This Court, as a court sitting in diversity, has "an obligation to interpret the law in accordance with the [state's highest court], or where the law is unclear, as it appears that the [state's highest court] would rule." *Wells v. Liddy*, 186 F.3d 505, 527–28 (4th Cir. 1999).

The West Virginia Supreme Court has not directly answered the question of whether a seatbelt requirement outside of West Virginia's mandatory seatbelt statute will make a seatbelt defense available to a defendant and therefore make seat belt non-use admissible. However, both *Wright* and *Jeffrey* reflect the high court's default position that seat belt non-use is generally inadmissible, in the absence of the Legislature saying otherwise, because "it undermine[s] the longstanding goals of loss spreading and recovery for victims that are the foundation of our modern

7

tort system." *Miller v. Jeffrey*, 576 S.E.2d 520, 525 (W. Va. 2002).

If West Virginia's high court was confronted with the issue this Court confronts today, it appears that it would decline to deem seatbelt non-use admissible for the purposes of establishing comparative fault or failure to mitigate damages. As discussed above, the seat belt defense does not fit neatly into traditional tort law concepts, and the West Virginia Supreme Court has yielded to the Legislature, finding it better suited to decide the subject. The Legislature answered the sticky question by enacting W. Va. Code § 17C-15-49. That section did more than simply mandate seatbelt use, rather, it also explicitly states when seat belt non-use could be admitted, how a court was to respond to a seatbelt defense, and how non-use would impact damages. W. Va. Code § 17C-15-49(d).

However, the statute mandating seatbelt use on the Hatfield-McCoy Trail, W. Va. Code § 20-14-8, does none of these additional things. The text of W. Va. Code § 20-14-8 certainly reveals that the Legislature was concerned with safety on the Trail. Including the seatbelt requirement, the statute requires that a person may not consume alcohol, must wear a helmet, always remain on the Trail, stay off the Trail 30 minutes after sunset and 30 minutes before sunrise, may not light a fire, engage in a race or test of physical endurance, or possess a glass container while riding in a motor vehicle, to name a few. Even though Trail safety was evidently on the minds of the West Virginia Legislature, § 20-14-8 does not appear to answer the tricky question of whether the failure to wear a seatbelt rises to a failure to exercise ordinary care, and if so, what impact it has on damages.

In this way, § 20-14-8 leaves this Court with as much guidance as the high court had in *Wright* and *Jeffrey*—none. Without legislative guidance, West Virginia precedent precludes the

8

seat belt defense, and this Court will not proceed to the contrary.

If this Court was to permit the seatbelt defense, it would lead to some unequal and questionable results. Defendants could invoke the seatbelt defense to defend against a UTV crash taking place on the Hatfield and McCoy Trail but could *not* invoke the defense if the same crash occurred on private property *or* if the crash involved a passenger vehicle on a private road (*Jeffrey*). Even if the crash involved a passenger vehicle on a public road, W. Va. Code § 17C-15-49 would only reduce the damages by 5%. It seems to be an anomalous result for a UTV passenger on the Trail to run the risk of being totally or largely barred from recovery, when the Legislature has otherwise stated that a failure to wear a seatbelt would, at worst, reduce recovery by only 5%.[3] The Court rejects the premise that the mere location (e.g., on or off the Trail) of the subject UTV's alleged failure could reasonably justify such disparate results.

The problem for this Court gets only more obscure because this is a products liability case, not a standard automobile collision suit. In this context, it seems even less likely that § 20-14-8 guides a duty analysis, because the statute is clearly focused on ensuring the Trail is safe for multi-purpose use and to minimize collisions. There is nothing to suggest the Legislature is making a broad statement about who bears the risk of injury when there is an alleged catastrophic failure of a UTV. Indeed, it seems unlikely that the Legislature would place such an announcement in Chapter 20, titled "Natural Resources," but rather would place a relevant pronouncement in Chapter 17F, which houses West Virginia's general provisions governing UTVs.

---

3 Such a result grows even more anomalous when the Legislature has not implemented a seatbelt requirement for UTVs generally. *See* W. Va. Code § 17F-1-1. The absence of a general seat belt requirement reflects, if anything, that the Legislature has not yet come to a definitive answer on the applicability of the seat belt defense to UTVs.

Accordingly, given the lack of definitive statutory guidance, it appears that West Virginia's high court would resort to its default position that seat belt non-use is inadmissible for purposes of establishing comparative negligence or failure to mitigate damages.

The parties further dispute whether the seatbelt non-use can be admitted as to the issue of proximate, or intervening, cause. Given the discussion above, the subject evidence would be inadmissible as to the issue of proximate or intervening cause. Further, in regard to intervening cause, West Virginia law makes clear that a victim's failure to take a precautionary step to buckle their seatbelt is not an intervening cause, even when its proper use would have prevented death. *State v. Nester*, 336 S.E.2d 187, 189 (W. Va. 1985).

Thus, for the reasons stated herein, evidence of the Plaintiff's non-use of the subject vehicle's seatbelt goes to no fact in issue, whether it be contributory negligence, damages, or proximate cause, and therefore is inadmissible. The motion in limine to preclude evidence of Charles Lomangino's seatbelt non-use should be granted.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *Polaris' Motion in Limine to Preclude Plaintiffs' Expert Dr. Keith Benoff from Testifying Regarding New Opinions Not Disclosed in His Expert Report* (Document 116) be **GRANTED,** that *Polaris' Motion in Limine to Exclude All Post-Manufacture Design and Development Information and Documents* (Document 119) be **HELD IN ABEYANCE**, as set forth herein, and that the *Plaintiffs' Motion in Limine To Exclude All Evidence of Plaintiff Charles Lomangino's Failure to Wear His Seatbelt* (Document 117) be **GRANTED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: August 22, 2023

_____
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA